Filed 9/23/13  P. v. Corlley CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062346 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD231389) |
| DERRICK EUGENE CORLLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard, III, Judge.  Affirmed as modified.  Remanded with directions.

Anthony J. Dain for Defendant and Appellant, under appointment by the Court of Appeal.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson, Vincent P. LaPietra, Deputy Attorneys General for Plaintiff and Respondent.

In his first jury trial, Derrick Eugene Corlley was convicted of unlawful possession of a firearm by a convicted felon (Pen. Code,[1] § 12021.1, subd. (a), count 6) and unlawful possession of ammunition by a convicted felon (§ 12316, subd. (b)(1), count 7), but the jury deadlocked on five robbery charges. However, in Corlley's second trial, the jury convicted him of the robberies (§ 211, counts 1-5) and found true that he personally used a firearm in committing the robberies (§ 12022.53, subd. (b)).

Corlley admitted he had two prior strike convictions (§ 667, subds. (b)-(i) and 1170.12, subds. (a)-(d)) and one prior serious felony (§ 667, subd. (a)). The court sentenced him to a determinate term of 75 years and an indeterminate term of 125 years to life.

Corlley contends: (1) the trial court prejudicially erred by failing to modify CALCRIM No. 207, or alternatively, give a unanimity instruction regarding the charges of possession; (2) there was insufficient evidence to support his robbery convictions; and (3) his sentence on count seven should be stayed under section 654. The People concede the last contention; we agree and modify the sentence on count seven. As so modified, the judgment is affirmed. We remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

*People's Case*

On June 9, 2010, two armed men dressed entirely in black, wearing face masks, entered a bank in San Carlos. One of the men was Black, and the other's racial identity

---

[1] All statutory references are to the Penal Code unless otherwise stated.

was undetermined at trial. The men ordered the bank employees to the ground and took money from the tills and the bank's vault. A third masked man waited outside in a vehicle.

At trial, Sylvia Bonker, a banker who was a victim of the robbery, reviewed the bank's surveillance videos and photographs of the robbers. She testified that during the robbery, she got a close view of the Black robber and glimpsed his complexion when his mask moved, but otherwise did not see his face. To her, the person in the video appeared similar to Corlley based on his skin color and build.[2] A different banker was in the vault when a robber ordered him to the ground. After the robbers went outside, the banker looked out the window, heard a loud sound and saw a pink cloud of smoke as a dye pack placed with the robbed money exploded.

---

[2]    On direct examination, Bonker testified in this exchange:
        "[Deputy District Attorney:]  Okay.  Now, are you able to identify anyone here in court that you saw that day, and say that's the person?
        "[Bonker:]  The day of the robbery?
        "[Deputy District Attorney:]  Right.
        "[Bonker:]  No.
        "[Deputy District Attorney:]  Okay.  You didn't really get a good look with the clothing, et cetera; correct?
        "[Bonker:]  Right.  I never actually saw the face without a mask.
        "[Deputy District Attorney:]  And are you able to say whether or not the person that's in court today, just to the far right, the defendant, whether he has any similarities or differences to the person you saw rob the bank in 2010?
        "[Bonker:]  The similarities, in my opinion, are his—the color of his skin, and he appears to be the similar build.
        "[Deputy District Attorney:]  And is that to both of the robbers or one of the robbers?
        "[Bonker:]  The one that I had the most contact with."

Scott Hazel was working at a gym when the incident occurred.[3]  Following the events at the bank, Hazel saw two men wearing all black clothes, each carrying a gun in one hand and a bag in the other.  They appeared to be between five feet eight inches and six feet, and weighed between 155 pounds and 170 pounds.  The two men entered a Ford Explorer.  Hazel saw red smoke coming from the vehicle.  Hazel looked for the vehicle's license plate, but saw none.  The driver appeared to drop a gun to the ground upon exiting the parking lot.  Hazel and another person pursued the Explorer by vehicle but lost sight of it shortly afterwards.

Police found a loaded handgun magazine inside the bank near where one of the robbers had stood on a counter.  They also found a black hooded sweatshirt and a black handgun, which had no magazine, in the parking lot near where the getaway vehicle had parked.  DNA matching Corlley's was found on these three recovered items.

When Corlley was arrested, police found his girlfriend's cell phone.  They reviewed calls made to and from the phone from May 1, 2010, to August 1, 2010.  They determined that within approximately 10 days before the robbery, someone had used that phone on three different days while in the vicinity of the bank.

*Defense Case*

A San Diego Police Department criminalist tested the sweatshirt and concluded that someone named Christopher Carter was a possible major contributor of the DNA

---

[3]     At the time of his testimony, Hazel was employed as a police officer.

4

found on it. Police initially thought Carter was incarcerated at the time of the incident, but later found out he had been living outside of prison in San Diego.

A San Diego Police Department evidence clerk testified that in processing evidence, clerks typically filled out a form that included a box indicating that the items received matched those items included on a separate list. In this instance, however, an item was admitted into the evidence without the clerk filling out that box. The testifying clerk had worked in the department for ten years but this was only the first or second time she had known such an omission to occur.

The forensic examiner inspected the recovered gun magazine in a lab; the magazine was in the same condition as when she had gotten it from the crime scene. Upon taking apart the magazine, red debris came out of it.

The parties stipulated that three strands of human hair found on the sweatshirt were tested and none of the strands matched Corlley's DNA; in fact, one of the strands was from a female.

DISCUSSION

I.

A.

Corlley contends the court erroneously declined to modify CALCRIM No. 207 to specify that the possession charges related to one specific date. He argues the People's evidence "left absolutely no doubt that the armed bank robbery was committed on June 9, 2010, and [he] presented the defense that he was not one of the robbers. Instructing his jury with CALCRIM No. 207 that the prosecution was not required to prove that the

5

charged offenses occurred on June 9, 2010[,] was error and impeded [his] defense because it allowed the jury to find [him] guilty of [c]ounts [s]ix and [s]even based on a finding that [he] possessed the gun and ammunition on a prior date."

On appeal, "[w]e determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

In declining to modify CALCRIM No. 207, the court ruled the trial evidence dealt only with events surrounding the bank robbery: "The problem I have is that there's absolutely no evidence from which the jury can consider anything other than the events of June 9th." Defense counsel acknowledged, "That's true. There was no evidence taken. But there was discussion in the opening statements[.]" The court interjected that the statement of counsel was not evidence. The court proceeded to instruct the jury with CALCRIM No. 207: "It is alleged that the crimes occurred on or about June 9, 2010. The People are not required to prove that the crimes took place exactly on that date but only that they happened reasonably close to that date."

6

On appeal, Corlley does not point to evidence in the record specifying how his DNA got on the gun and ammunition on a date other than June 9, 2010. Absent such evidence, any claim that the jury might have convicted him based on his handling the items on a different date is entirely speculative. On this record, the jury likely interpreted CALCRIM No. 207 to refer only to the crimes committed on June 9, 2010. Therefore, we conclude the court did not err in instructing with CALCRIM No. 207.

B.

Corlley alternatively contends the trial court erred by failing to instruct the jury on its own motion regarding unanimity. Noting the jury had previously deadlocked on the robbery charges, he argues, "[T]he record demonstrates that it is more than reasonably probable that some jurors believed [he] possessed the gun and gun magazine while participating in the bank robbery, while others were not convinced that he possessed those items during the robbery but were convinced that [he] possessed those items on some other date and returned a guilty verdict on [c]ounts [s]ix and [s]even on that alternative basis."

To convict a defendant, juries must reach unanimous verdicts. Courts must instruct on unanimity when multiple actions could independently constitute a charged offense and the prosecution does not identify which of a defendant's actions it relies on to support the conviction. The unanimity requirement protects due process by preventing juries from convicting a defendant without agreeing on the discrete offense committed. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) " 'Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose

among the theories, so long as each is convinced of guilt. Sometimes . . . the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.' " (*Id.* at p. 1136.)

Here, the court did not err in failing to instruct regarding unanimity because, as noted, absent evidence of Corlley's possession of the items at any time other than during the robberies, there was no reasonable likelihood of jury confusion. Accordingly, we need not attempt to resolve Corlley's claim regarding a seeming inconsistency between the jury's guilty verdict on the possession charges and its deadlock on the robbery charges in the first trial.

## II.

Corlley contends insufficient evidence supported his conviction for the robberies because "[t]he robbers wore hoods and other loose clothing that prevented their identification, and all of the eyewitnesses were only able to give vague general characteristics of the robbers."

When sufficiency of the evidence is challenged on appeal, our role in reviewing the evidence is limited. We do not reweigh the evidence and substitute our judgment for that of the jury. (*People v. Escobar* (1996) 45 Cal.App.4th 477, 481.) Instead, we determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "We view the entire record in the light most favorable to the judgment and presume the existence of every fact

the trier of fact could reasonably deduce from the evidence in support of the judgment." (*People v. Abrego* (1993) 21 Cal.App.4th 133, 136.) This standard applies whether direct or circumstantial evidence is involved. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) This court's authority begins and ends with a determination of whether any substantial evidence, disputed or not, supports the verdict. Thus, when the record discloses substantial evidence—that is reasonable, credible and of solid value—we accord due deference to the trier of fact. (*People v. Jones*, at p. 314.) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] '[I]t is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt.' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1289-1290, fn. omitted.)

In upholding a robbery conviction based on poor identification of the robber, we noted in a different case: " '[I]t is not essential that a witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime, and the want of positiveness goes only to the weight of the testimony.' " (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 522.) We also relied on authority stating, " '[I]t is not necessary that any of the witnesses called to identify the accused should have seen his face. [Citation.] Identification based on other peculiarities may be reasonably sure. Consequently, the identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing.' "

(*People v. Mohamed*, at p. 522, quoting *People v. Lindsay* (1964) 227 Cal.App.2d 482, 494.)

Here, despite the fact the robbers' faces were mostly concealed, one witness identified one of them as Black, and noted that the robber had a build similar to Corlley, who also is Black. Moreover, the jurors saw surveillance video and photographs showing the robbers' attire, body builds and movements. "The strength or weakness of the identification . . . and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance." (*People v. Lindsay, supra*, 227 Cal.App.2d at pp. 493-494.)

Additionally, the People presented circumstantial evidence in the form of phone records showing a phone belonging to Corlley's girlfriend had been used in the vicinity of the bank three times in the week and a half before the robbery. In light of the totality of evidence presented, the jury could reasonably infer Corlley was casing the bank and committed the robbery. The jury also evaluated the witness' demeanor and credibility, and weighed counsels' arguments regarding the disputed question of the Black robber's identity. Based on the record, we conclude that the DNA tests, photographic and video images and telephone records sufficed to support the verdict.

Although Corlley contends that his DNA could have been placed on the gun and the ammunition at an earlier date and he was not involved in the robberies, the jury reasonably could reject his claim. We do not reweigh the evidence on appeal. He has not proved that the evidence was insufficient under any hypothesis. "The existence of

10

possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it 'be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the [trial court.]' " (*People v. Redrick* (1961) 55 Cal.2d 282, 290.)

III.

The People concede, and we agree, that under section 654, it was error to sentence Corlley separately on the convictions for possession of a firearm and possession of ammunition. "While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them." (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138.) Accordingly, we agree the sentence on count seven should be stayed.

11

DISPOSITION

We modify the judgment by staying the sentence on count seven under Penal Code section 654. As so modified, the judgment is affirmed. The matter is remanded and the trial court is directed to amend the abstract of judgment accordingly and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.